United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RITA ACOSTA, et al.,

           Plaintiffs,

     v.

CITY OF SALINAS,

           Defendant.

Case No. 15-cv-05415 NC

**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 72

       In this putative class action, Plaintiffs move for a temporary restraining order to enjoin the City of Salinas from enforcing City Ordinance 2567 and Resolution 20908 authorizing the City to conduct cleanup sweeps of a homeless encampment in its Chinatown neighborhood. The Court DENIES Plaintiffs' motion for a temporary restraining order with prejudice because Plaintiffs have not shown a threat of immediate and irreparable injury to themselves in the absence of an injunction.

**I.    FACTUAL HISTORY**

       This motion is about Ordinance 2567, which empowers the City of Salinas to conduct a cleanup of its Chinatown neighborhood pursuant to the administrative procedures outlined in Resolution 20908 on March 29, 2016. Ordinance 2567 is a successor to Ordinance 2564, which was the subject of Plaintiffs' complaint and contained many of the same provisions and regulations. The City has attached Ordinance 2567 at docket number 36-1 and Resolution 20908 at docket number 36-2. Ordinance 2567 was passed by the Salinas City Counsel with the "intent of preventing the misappropriation of City property for personal use and the proliferation of encampments on public property

that have a significant adverse effect on public health, safety, and welfare and impede or entirely obstruct access by emergency responders when responding to emergencies." Dkt. No. 36-1 at 2. Ordinance 2567 states that "[n]o person shall fail to remove personal property stored on City Property by the date of scheduled removal provided on the written notice posted in accordance with the Administrative Procedure" in Resolution 20908. Dkt. No. 36-1 at 6. It authorizes the City to store or dispose of personal property which is not removed by the date of the scheduled removal posted in the notice. *Id.*

Resolution 20908's Administrative Procedure "requires outreach to affected individuals, referral of individuals to supportive services, reasonable advance notice to affected individuals of the deadlines by which they are to remove their personal property from public property, the City's storage of personal property that has been removed by the City-established deadline, and an exception to permit the temporary use of tents, sleeping bags, and the like overnight between 6:00 p.m. and 6:00 a.m. the next morning." Dkt. No. 36-2 at 5.

The "reasonable advance notice" includes a requirement that the City post notices with information, stated in both English and Spanish, including:

1. The title "Notice of Clean-Up;"
2. The posting date;
3. A general description of the personal property to be removed and the location from which the personal property will be removed;
4. A statement that the personal property on the job site is currently being stored in violation of the Salinas City Code;
5. The location where the removed personal property will be stored, if not removed by the deadline listed in the notice;
6. Dates of scheduled removal of personal property (can be a range of dates);
7. Starting time of the first day of the cleanup;
8. A statement that personal property found at the site and not removed by its owner will be stored by the City for 90-days and that if such personal property is not recovered within that period it will be deemed abandoned and that the personal property will be destroyed.
9. Storage bags will be provided prior to the removal or personal property for storage upon request; and
10. Homeless Service Provider Hotline to call (to be considered by the County and Coalition of Homeless Service Providers- if or when this becomes available).

Dkt. No. 36-2 at 8. These notices must be posted at least fifteen days prior to any

1   proposed cleanup, "absent circumstances at the site requiring shorter notice or where the
2   individual has previously received notice under this procedure and had personal property
3   removed and has reestablished the encampment at the same or other location." *Id*.

4       In addition to its notice requirement, the Administrative Procedure in Resolution
5   20908 requires the City to provide "bags and tags" both before and during the cleanup.
6   Pre-cleanup, "[b]ags and tags will be handed out to individuals present at the site to assist
7   them with the storage of their personal property." Dkt. No. 36-2 at 8.  Then, on the day of
8   the cleanup, "[o]nce again, bags and tags will be provided to individuals to help them sort
9   and remove their personal items in the event they remain on-site. They are also able to
10  contact the Homeless Services Hotline or City staff on-site who will be available to answer
11  questions about the cleanup." *Id*.

12      Plaintiffs are "seven homeless individuals living in the City of Salinas" who have
13  filed a Complaint alleging that their personal property has been seized and destroyed or
14  will be seized and destroyed by the City in violation of their constitutional rights.  Dkt. No.
15  1 at ¶ 11.  The named Plaintiffs are Rita Acosta, Van Gresham, Cherie Hernandez, William
16  Silas, Bessie Taylor, Joseph Blains, and John Lerma.  *Id*. at ¶¶ 16–22.  Plaintiffs have not
17  received class certification.

18      Plaintiffs allege that, "[o]ver the past two years, their personal possessions [have
19  been] confiscated and presumably destroyed by [City] employees . . . as part of an ongoing
20  practice targeting the homeless in the city." *Id*.  Plaintiffs allege that the implementation
21  of Ordinance 2567 and Resolution 20908 "only augments the danger that the personal
22  property of the homeless residents of the City of Salinas will [be] seized" in violation of
23  federal and state law.  *Id*. at ¶ 14.

24      Therefore, Plaintiffs move "for entry of a Temporary Restraining Order against the
25  enforcement of City of Salinas Ordinance No. 2567 . . . [to] enjoin the City from otherwise
26  seizing, storing, discarding or destroying property belonging to homeless persons and
27  forcibly dispersing the residents of this encampment into the streets where they are now
28  suffering lack of access to food, medical care, their possessions and shelter all of which

they had ready access to in the Chinatown area." Dkt. No. 72 at 3.

The City conducted a cleanup sweep of the Chinatown neighborhood on the morning of March 29, 2016. Dkt. No. 82 at 7. Neither Plaintiffs nor Defendant have stated that there are more cleanup sweeps planned for the area, but Ordinance 2567 and Resolution 20908 permit the City to continue planning and executing sweeps as needed to clear personal property that is being stored on city property. *See* Dkt. No. 36-1.

## II.    PROCEDURAL HISTORY

This is the fourth motion by Plaintiffs to enjoin the City from conducting a cleanup sweep of Chinatown.

Plaintiffs' complaint, filed on November 24, 2015, included an ex parte application for a temporary restraining order. Dkt. No. 1-12. The ex parte application sought to "bar the City of Salinas . . . from seizing, storing and/or immediately and/or subsequently destroying the personal property including so-called 'bulky items' belonging to homeless individuals living without shelter in the City of Salinas" under Ordinance 2564. *Id.* at 8. On November 25, 2015, Judge Koh denied Plaintiffs' ex parte application because it "fail[ed] to comply with the requirements of Federal Rule of Civil Procedure 65(b)(1) and Civil Local Rule 5-1." Dkt. No. 5 at 2.

Plaintiffs then moved for a preliminary injunction against Ordinance 2564 on grounds of facial invalidity on December 22, 2015. Judge Koh denied the motion as moot in light of the City's action replacing Ordinance 2564 with Ordinance 2567, which no longer contained the provisions that were challenged as unconstitutional in Plaintiffs' motion. Dkt. No. 45 at 6.

On March 3, 2016, Judge Koh held a case management conference with the parties and set an abridged briefing schedule for Plaintiffs to file an as-applied challenge to Ordinance 2567 before the City's scheduled implementation of Ordinance 2567 and Resolution 20908 on March 23, 2016. Dkt. No. 53.

1    The case was reassigned to this Court on March 9, 2016.[1]  Plaintiffs filed a motion

2    for a temporary restraining order, which this Court denied on March 16, 2016, for failure

3    to allege an as-applied challenge to Ordinance 2567 as required by Judge Koh's case

4    management order.  Dkt. No. 70.  This Court instructed Plaintiffs to confer with the City

5    before filing any additional motions challenging Ordinance 2567.

6    Currently before the Court is Plaintiffs' fourth ex parte motion to enjoin the City

7    from conducting a Chinatown sweep, which Plaintiffs filed on March 25, 2016.  Dkt. No.

8    72.  Finding this matter suitable for decision without oral argument under Civil Local Rule

9    7-1(b), the Court vacated the hearing set for March 30, 2016.

10   **III.  LEGAL STANDARD**

11   **A.    Temporary Restraining Order**

12   Under Federal Rule of Civil Procedure 65, a district court may issue a temporary

13   restraining order to prevent "immediate and irreparable injury, loss, or damage [] to the

14   movant."  Fed. R. Civ. P. 65(b), (d).

15   The standard for issuing a temporary restraining order is identical to the standard

16   for issuing a preliminary injunction.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240

17   F.3d 832, 839 n.7 (9th Cir. 2001).  Plaintiffs seeking a temporary restraining order must

18   establish:

19           (1) a likelihood of success on the merits;
             (2) a likelihood of irreparable harm in the absence of the
             restraining order;
20           (3) that the balance of equities tips in favor of issuing the
             restraining order; and,
21           (4) that issuing the restraining order is in the public interest.

22   *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *DISH Network Corp. v.*

23   *F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).  The party seeking the injunction bears the

24   burden of proving the requisite elements.  *Klein v. City of San Clemente*, 584 F.3d 1196,

25   1201 (9th Cir. 2009).

26

27

28   _____
     [1] Both Plaintiffs and the City have consented to the jurisdiction of a magistrate judge under
     28 U.S.C. § 636(c).  Dkt. Nos. 64, 65.

United States District Court
Northern District of California

### B.    As-Applied Constitutional Challenge

"An as applied challenge may seek (1) relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied, or (2) an injunction against future application of the statute or ordinance in the allegedly impermissible manner it is shown to have been applied in the past.  It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right." *Tobe v. City of Santa Ana*, 9 Cal.4th 1069, 1084 (1995).

## IV.   EX PARTE APPLICATION

Civil Local Rule 7-10 states that "a party may file an ex parte motion . . . only if a statute, Federal Rule, local rule or Standing Order authorizes the filing of an ex parte motion in the circumstances and the party has complied with the applicable provisions allowing the party to approach the Court on an ex parte basis."  Civil L.R. 7-10.  In addition, any ex parte motion "must include a citation to the statute, rule or order which permits the use of an ex parte motion to obtain the relief sought."  *Id.*

Plaintiffs' current ex parte motion fails to comply with Civil Local Rule 7-10.[2]  The City at docket 82 has responded to Plaintiffs' motion and has therefore had a chance to be heard on the motion.  However, the City alleges that Plaintiffs did not give the City any prior notice before filing the motion.  Dkt. No. 82 at 3.  Judge Koh has denied multiple requests to file documents in this case because Plaintiffs failed to comply with Civil Local Rule 7-10.  *See* Dkt. No. 59.  When denying a motion for administrative relief because it failed to comply with Local Rule 7-10, Judge Koh stated, "During the March 3, 2016 case

---

[2] It also fails to comply with Local Civil Rule 65-1, which requires that an ex parte motion for a temporary restraining order be accompanied by a separate memorandum of points and authorities in support of the motion.

United States District Court
Northern District of California

management conference, the Court emphasized that too many documents were being filed on an ex parte basis in this action, and that, given the gravity of the issues presented, the Court would like to hear from both parties going forward.  The parties agreed with the Court's assessment.  Accordingly, the Court again emphasizes that ex parte filings in this action are strongly discouraged."  *Id*. (internal citations omitted).

Because the City has responded to Plaintiffs' motion, it is not truly ex parte as both parties have had the opportunity to be heard.  *Granny Goose Inc. v. Teamsters*, 415 U.S. 423, 435 (1974) (noting Rule 65's "stringent" requirements for granting a temporary restraining order because there has not been "reasonable notice and an opportunity to be heard [for] both sides of a dispute.")  However, Plaintiffs' failure to provide the City with notice of the motion violates the Court's previous order.  Plaintiffs are warned that future ex parte filings will not be considered if they do not comply with the Local Rules and the Court's orders.

## V.   DENIAL OF TEMPORARY RESTRAINING ORDER

### C.   Likelihood of Success On The Merits

To prevail on their motion, Plaintiffs must make a showing that the application of Ordinance 2567 as to them in specified circumstances violates the United States Constitution.  *Tobe*, 9 Cal.4th at 1084.  To do so, Plaintiffs must provide specific facts to show how the City's implementation of Ordinance 2567 has denied them a protected right. *Id*.

Other plaintiffs have succeeded in as-applied challenges to city ordinances where they showed that the city failed to follow the procedural safeguards in the ordinance or failed to provide sufficient notice to the plaintiffs before seizing property.  For example, in *Russell v. City and County of Honolulu*, No. 13-cv-00475 LEK (RLP), 2013 WL 6222714, *6-*7, (D. Haw. Nov. 29, 2013), the district court denied a facial challenge to a Sidewalk Nuisance Ordinance but found that the plaintiffs had demonstrated a likelihood of success on the merits of their "as-applied" challenge and issued a preliminary injunction on that basis.  *Id*. at *14-*18.  The court was concerned that the City and County of Honolulu had

Case No. 15-cv-05415 NC                    7

United States District Court
Northern District of California

1   not complied with the procedures set forth in the Sidewalk Nuisance Ordinance and had

2   not provided sufficient notice to individuals whose property was seized.  *Id*. at *15.

3       In *Russell*, the City and County had provided Summary Removal Notices to the

4   plaintiffs but the court found that the "Summary Removal Notices that [the plaintiffs]

5   received after the removal of their property . . . did not inform them that they could reclaim

6   their necessities without paying the fee and without a hearing, nor did the notices inform

7   them that they could seek a waiver of the fee from the hearings officer if the fee was

8   onerous for them."  *Id*. at *14.

9       The court concluded that the City's enforcement of the Sidewalk Nuisance

10  Ordinance was likely unconstitutional as it was applied to the plaintiffs because of the

11  deficiencies in the Summary Removal Notices provided.  *Id*. at *15.

12      In contrast, the temporary application presented here is more like the one denied in

13  *Martin v. City & Cty. of Honolulu*, No. 15-cv-00363 HG-KSC, 2015 WL 5826822, at *8

14  (D. Haw. Oct. 1, 2015).  There, the district court found that homeless plaintiffs had not

15  presented enough information to justify the court granting a temporary restraining order.

16  *Martin*, No. 15-cv-00363 HG-KSC, 2015 WL 5826822 at *8.  Here, as in *Martin*,

17  Plaintiffs have not shown that they have been deprived of their property by the City

18  without notice or procedure.

19      In fact, Plaintiffs' submitted declarations are less substantive than the request

20  presented in *Martin*; here, no declarant states that his or her own property has been seized

21  or destroyed, or that the declarant saw evidence of harm to someone who is a party to the

22  case.

23      Instead, Plaintiffs' motion makes broad statements about harm to third parties.  It

24  alleges that "harm includes the dispersal of seriously mentally ill persons—including

25  persons at risk for suicide who had access to crisis intervention treatment by professionals

26  in Chinatown—such that their treaters cannot locate these clients at all.  This harm

27  includes separation of homeless persons from sources of food previously provided . . . to

28  homeless persons in Chinatown."  Dkt. No. 72 at 2 (internal citations omitted).  Plaintiffs'

United States District Court
Northern District of California

1   motion goes on to describe the City's alleged "seizure of vital items of personal property

2   from homeless persons who today were forced to dump necessities including blankets,

3   bedding, shoes and clothing into 96-gallon garbage cans that were then carted away by the

4   City." *Id.*

5       However, the declarations attached to the motion fail to show imminent harm to any

6   party in the case. Only one of the declarations comes from a plaintiff in the case. Rita

7   Acosta's declaration details her observations of the cleanup efforts on March 24, 2016.

8   Dkt. No. 73 at 1. She also disputes the need for the cleanup, stating that "[c]ontrary to

9   what the City said, the streets were never impassible, and the sidewalks in front of the

10  handful of open establishments that are there to serve the homeless . . . were clear and

11  unobstructed." *Id.* at 2. Her dispute with Ordinance 2567 on its face is not applicable to

12  an as-applied challenge.

13      Moreover, the declaration of Don Reynolds in opposition to Plaintiffs' ex parte

14  application states as follows: "Rita Acosta lives in a shelter and does not live in a tent or

15  other structure in the Chinatown area and is not otherwise living on the street or the

16  sidewalk. Rita Acosta is an employee of the shelter in which she resides." Dkt. No. 86 at

17  2. Acosta's declaration does not state any involvement in the sweep or contact with any

18  City official, or show that any of her personal possessions were seized or destroyed in the

19  sweep. Therefore, her declaration has not presented facts showing that she has or will

20  suffer injury by implementation of Ordinance 2567.

21      Similarly, the other attached declarations do not satisfy Rule 65's requirement to

22  show that any plaintiff has suffered an irreparable injury as a result of an unconstitutional

23  application of Ordinance 2567. Tony Castillo, another declarant, is a business owner who

24  resides in Salinas and provides food to homeless persons living in the Chinatown area.

25  Dkt. No. 74. Castillo is not homeless, does not reside in Chinatown, and would not be

26  subject to the ordinance. *Id.* at 1. Castillo states that "[s]ince the City announced

27  implementation of the plan to bulldoze the Chinatown camp two weeks ago, the number of

28  homeless persons I am able to feed has dropped from approximately 105 to about 75. I

Case No. 15-cv-05415 NC                         9

*left margin, rotated:* United States District Court  Northern District of California

1  learned that many of those who were previously able to obtain food from me in Chinatown

2  fled the area fearful of losing their tents, shelter and possessions." *Id*. at 2.  Castillo

3  believes that "[w]ith the destruction of this camp and the scattering of homeless persons

4  onto the streets, underpasses and other areas across the city, it will be extremely difficult if

5  not impossible for me to find and feed the men, women and children I have been able to

6  assist in Chinatown."  *Id*.  However, this declaration does not describe the unlawful seizure

7  of any property owned by a named plaintiff or other homeless person.  It does not state that

8  the City did not provide notice; in fact, Castillo's declaration describes homeless

9  individuals reacting to the notices posted in the weeks prior to the cleanup.  It also does not

10  describe City officials seizing and destroying personal property without providing "bags

11  and tags" as required by Resolution 20908.  *See* Dkt. No. 36-2 at 8.

12      Likewise, Plaintiffs' attorney Anthony Prince's declaration fails to demonstrate an

13  injury in fact to any plaintiff sufficient for the issuance of a temporary restraining order.

14  Dkt. No. 76.  The majority of Prince's declaration consists of statements from Dr. Paul

15  Wright, who filed a separate declaration stating the facts with personal knowledge.  *Id*. at

16  1-2.  The remainder of Prince's declaration consists of other statements alleged to have

17  been made by Jill Allen, a homeless services provider in the Chinatown area, and a

18  description of Prince's efforts to communicate with Defendants about Plaintiffs' intent to

19  file the instant motion.  *Id*. at 2-3.

20      In addition to his declaration stating his efforts to communicate with Defendants,

21  Prince attaches at docket 80 an image of a message stating, "This is to inform you that

22  today Plaintiffs will be filing an Ex Parte Application for a Temporary Restraining Order

23  to halt the Chinatown sweeps."  Dkt. No. 80 at 1.  However, the message is not dated and it

24  is not clear that the message is an email or that it was received by the City.  The City states

25  that it did not receive notice of Plaintiffs' motion before it was filed.  *See* Dkt. No. 82 at 2.

26      The declaration by Dr. Paul Wright contains no facts or evidence to demonstrate

27  any impact on any of the named plaintiffs.  Dkt. No. 81.  Dr. Wright describes his inability

28  to locate patients in the weeks leading up to the sweeps and his concerns regarding

United States District Court
Northern District of California

Case No. 15-cv-05415 NC            10

1   unidentified individuals' psychiatric condition.  The harm alleged in Dr. Wright's

2   declaration is a general fear of dispersal of mentally ill persons.  Because he is not

3   describing harm to any plaintiff, his declaration does not provide grounds to issue a

4   temporary restraining order.

5        The declarations attached to Plaintiffs' reply to the City's response to the motion

6   are equally unpersuasive.  Miriam Smith's declaration states that she is a "longtime

7   community activist who has provided support and assistance to the homeless in Salinas for

8   many years."  Dkt. No. 88-1 at 1.  Smith states that she was present during the "recent

9   destruction of the Chinatown homeless encampment" and that the City's declarations

10  describing the sweep are untrue.  *Id*. at 1-2.  Smith states that she heard police yelling

11  "You have two minutes to get out," and observed "most of the homeless" unable to store

12  "much of anything in the 96-gallon garbage cans that the city provided."  *Id*. at 2.  She also

13  states that homeless individuals told her that most of their possessions were destroyed in

14  the sweep and that they were told that they could not store possessions such as tents and

15  small pieces of furniture.  *Id*.  Smith states that a woman named Antonia Rodriguez "had a

16  mental breakdown and was taken to Natividad Hospital when the City seized and

17  destroyed her possessions."  *Id*.

18       However, Smith's declaration does not state that she observed City workers failing

19  to hand out the 96-gallon containers for people to put their personal possessions in, or a

20  sweep with no prior notice in violation of the terms of Resolution 20908.  As such, her

21  declaration does not provide grounds for an as-applied challenge because it does not show

22  that the City's implementation violated the administrative protections of Ordinance 2567

23  and Resolution 20908.  *Martin*, No. 15-cv-00363 HG-KSC, 2015 WL 5826822 at *8.

24       Jessica Marie Medina states in her declaration that she is a part time worker at "Ord

25  [sic] Commissary in Seaside, C.A." who volunteers at the Salinas foodbank.  Dkt. No. 89

26  at 1.  However, she does not declare that she is homeless.  She does not identify any ties

27  with any of the named plaintiffs or describe any harm to them.  The only person whose

28  name she mentions in her declaration is someone named Diane whose recreational vehicle,

Case No. 15-cv-05415 NC                11

in which Diane lives, was towed.  Ordinance 2567 does not apply to persons living in their recreational vehicles.  Medina states that she saw City officials handing out storage bins but that they ran out of bins before all the homeless individuals received two bins to put their possessions in.  *Id*. at 4.  However, she does not identify any specific person who did not get the allotted storage bins or describe misconduct by City officials that would provide grounds for an as-applied challenge on the basis that the City was not following the notice requirements of Ordinance 2567 and Resolution 20908.

In fact, the City officials' declarations submitted with its response to the motion establish that the City has enforced the ordinance consistent with the procedural protections built into Ordinance 2567 and Resolution 20908.  Dkt. No. 84.  This is unlike *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012) because there, the City of Los Angeles did not dispute the plaintiffs' allegations and admitted that it had a policy and practice of seizing and destroying homeless persons' possessions when they had not been abandoned.  *Lavan*, 693 F.3d at 1025.  The City of Los Angeles also conceded that it did not provide any notice or an opportunity to be heard to the plaintiffs either before or after seizing their property.  *Id*. at 1032.

In contrast, the City here states that it has provided notice and followed the procedural safeguards in Resolution 20908. Greg Knowles, the Assistant Redevelopment Project Manager for the City, has submitted a declaration attesting to the process by which the City conducted the cleanup.  Dkt. No. 86 at 2.  Knowles states that City work crews and crews from the City's contractor, Smith & Enright, provided 96-gallon storage bins to individuals to store their personal property and that no one was charged for the storage bins.  *Id*. at 2.

Knowles declares that "City workers and Smith & Enright crews went tent-by-tent to ensure no individuals were present in the tents before the area was cleaned up and to ensure that the individuals had removed all their personal property they wanted to keep and to have the City store and ensure that before the cleanup occurred the individual indicated their intent to abandon whatever remained at their campsite."  *Id*.  He goes on, "[i]n those

circumstances where no individual was identified with a particular campsite, the personal property at that campsite was removed by Smith & Enright and stored consistent with the ordinance and Administrative Procedure." *Id.*

In addition to the storage bins provided by the City, "personal property items removed by the City and too large to be placed into a storage bin are being stored at 312 East Alisal Street, property under the control of the City." *Id.*  Finally, the storage bins "and other property are being stored in a covered area and are behind a locked gate to prevent their being stolen or lost." *Id.*  The City therefore has presented evidence that it has observed the procedural requirements of Ordinance 2567 and the Administrative Procedure in Resolution 20908, most notably the notice requirement and the requirement to provide individuals with "bags and tags" to store their personal property so it is not destroyed.  *See* Dkt. No. 36-2 at 8.

Therefore, the Court finds that Plaintiffs have not satisfied their burden to show a high likelihood of success on the merits.

### D.    Likelihood of Irreparable Harm

Plaintiffs seeking a temporary restraining order must demonstrate that irreparable injury is likely in the absence of a restraining order.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Plaintiffs have not established a likelihood of irreparable harm in the absence of a temporary restraining order. The City has represented that it complies with the procedures set forth in the Ordinance and Administrative Procedure and does not seize and immediately destroy personal property.  Dkt. No. 84.  For the same reasons that the Plaintiffs' declarations fail to show a high likelihood of success on the merits, they fail to demonstrate the threat of personal irreparable injury.

### E.    Balance of Equities

"To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it."  *Univ. of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096,

Case No. 15-cv-05415 NC                    13

United States District Court
Northern District of California

1108 (9th Cir. 1999) (citing *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1203 (9th Cir. 1980)).  The Court recognizes that Plaintiffs have a compelling ownership interest in their personal property, especially "given the vulnerability of [] homeless residents: For many of us, the loss of our personal effects may pose a minor inconvenience.  However, the loss can be devastating for the homeless." *Lavan*, 693 F.3d at 1032 (citing *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559 (S.D. Fla. 1992)) (internal citations and quotations omitted).

However, Ordinance 2567 and Resolution 20908 are not confronting a facial challenge.  The City has presented declarations stating that it has followed Resolution 20908's procedures requiring notice and "bags and tags" provided for storage.  As such, the balance of equities weighs in favor of denial of the temporary restraining order because the City of Salinas has an interest in enforcing its ordinances in order to prevent health and safety hazards and the blockage of public spaces and thoroughfares.  *Martin*, No. CV 15-00363 HG-KSC, 2015 WL 5826822, at *8 (balance of equities weighed in favor of denying temporary restraining order because if granted, temporary restraining order would have prevented City of Honolulu's ability to enforce its own ordinances, leading to obstructed sidewalks and public spaces as well as potential health and safety hazards).

Therefore, the balance of equities here, while involving important rights on both sides, weighs against Plaintiffs' proposed temporary restraining order.

### F.   Public Interest

The Supreme Court has made clear the "the importance of assessing . . . the public interest in determining whether to grant a preliminary injunction" or temporary restraining order.  *Winter*, 555 U.S. at 26.  Here, the City proffers the public interest in having safe and unobstructed public spaces and thoroughfares, as well as preventing health and safety hazards to the general public as well as the homeless individuals living in the Chinatown encampment.  Dkt. Nos. 17, 82.  Plaintiffs do not explicitly address the public interest in their current motion, but make statements about the general societal harms threatened by the cleanup, including the stigmatization of homelessness.  Plaintiffs also state that the

1  harms facing homeless persons in Salinas after the cleanup, including lack of access to

2  food, medical care, their possessions and shelter, are "not conditions endemic to the status

3  of being homeless: these are state-created dangers."  Dkt. No. 72 at 3.

4      Both stated public interests are weighty.  However, because Plaintiffs have not

5  shown that, as-applied, Ordinance 2567 and Resolution 20908 abrogate their constitutional

6  rights, this factor tips in favor of denying the temporary restraining order.

7  **VI.   CASE MANAGEMENT**

8      **A.    Amended Complaint**

9      Plaintiffs were instructed to provide to the City a proposed amended complaint by

10  April 7, 2016.  Dkt. 53 at 2.  The City has until April 14, 2016, to respond to Plaintiffs as

11  to whether Defendant will stipulate to the filing of Plaintiffs' proposed amended

12  complaint.  If Defendant declines to so stipulate, Plaintiffs must file a motion for leave to

13  amend the complaint by April 21, 2016.  However, in its response to Plaintiffs' motion for

14  a temporary restraining order, the City stated that Plaintiffs had not provided a proposed

15  amended complaint as of March 29, 2016.  Dkt. No. 82 at 3.

16      Plaintiffs have until April 21, 2016, to file a motion for leave to amend the

17  complaint, but they are warned that they must either show that they provided the City a

18  proposed amended complaint by April 7, 2016, or show good cause to amend given their

19  apparent failure to follow the procedure for the parties to agree on an amended complaint.

20  **VII.  CONCLUSION**

21      For the reasons stated above, Plaintiffs' request for a temporary restraining order to

22  enjoin the City from conducting the Chinatown cleanup sweep under Ordinance 2567 and

23  Resolution 20908 on March 29, 2016, is DENIED with prejudice.

24

25      **IT IS SO ORDERED.**

26

27  Dated:  April 13, 2016                                    _____

28                                                            NATHANAEL M. COUSINS
                                                              United States Magistrate Judge

United States District Court
Northern District of California